UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| | | |
| THE WEST NOTTINGHAM ACADEMY | * | Case No. 23-13830-MMH |
| IN CECIL COUNTY | | Chapter 11 (Subchapter V) |
| | * | |
| Debtor | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>DEBTOR'S FIRST AMENDED</u>
<u>CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION</u>

THE WEST NOTTINGHAM ACADEMY IN CECIL COUNTY (the "Debtor") the debtor in possession herein (the "Debtor"), proposes the following First Amended Chapter 11, Subchapter V, Plan of Reorganization (the "Plan") pursuant to §1190 and §1191 of Title 11 of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

**All Creditors and Interest Holders should refer to Articles I through III of this Plan for information regarding the precise treatment of their Claims. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one. This Plan is a proposal by the Debtor and is subject to Bankruptcy Court approval after opportunity for objections and a hearing. Please refer to a Scheduling Order to be entered by the Court for important information regarding Plan voting and objection deadlines.**

1

## DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

A.    Definitions

Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and plural forms of such terms and to all genders:

Administrative Expense Claim shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b), 507(a)(2) and 1192(e) of the Bankruptcy Code, including, without limitation, any Claim arising from the assumption of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, fees and expenses of the Subchapter V Trustee and any Professionals employed by the Debtor, and any taxes incurred during the pendency of this Bankruptcy Case.

Allowed with respect to any Claim shall mean: (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtor or a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any Claim expressly Allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is

hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

Amended DIP Financing Agreement shall mean the Amended and Restated Post-Petition Loan and Security Agreement by which the Debtor shall receive DIP Financing from Casa Laxmi to partially fund this Plan and/or improvements to the Debtor's assets.

Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Maryland or any other court having jurisdiction over the Debtor's Chapter 11 case or any proceeding arising under this Chapter 11 Case.

Bankruptcy Rules shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of Title 28 of the United States Code, (ii) the Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of Title 28 of the United States Code, (iii) the Local Rules of the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this case or proceedings herein, as the case may be.

Casa Laxmi shall mean Casa Laxmi, SA, the entity that has provided DIP Financing to the Debtor in the course of this Chapter 11 Case and that will continue to provide DIP Financing following, and as part of, this Plan.

Chapter 11 Case shall mean the above-captioned Subchapter V bankruptcy proceeding filed by the Debtor.

Claim shall have the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Class shall mean any class in which Allowed Claims are classified pursuant to **Articles II and III** of this Plan.

Confirmation Date shall mean the date the entry of the Confirmation Order becomes a Final Order.

Confirmation Order shall mean the Order of the Bankruptcy Court in this Chapter 11 Case.

confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code.

Creditor shall mean the Holder of a Claim, within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Claims, and Priority Tax Claims.

Debtor shall mean The West Nottingham Academy in Cecil County, the debtor in possession in this Chapter 11 Case.

DIP shall mean debtor in possession which in this Case is The West Nottingham Academy in Cecil County, as it has continued in possession of its assets and operated its business during the course of this Chapter 11 Case.

DIP Financing shall mean the advance of funds that, with the approval of the Court, the Debtor has received from Casa Laxmi during the Course of this Chapter 11 Case.

DIP Financing Agreement shall mean the Post-Petition Loan and Security Agreement by which the Debtor received DIP Financing from Casa Laxmi through October 31, 2023.

4

ECF shall mean excess cash flow, defined as net income plus, depreciation, less deferred maintenance related capital expenditures, all as determined in accordance with GAAP, excluding donations or grants received, by the Debtor.

Effective Date shall mean the first business day following the date that is thirty (30) days after the entry of the Confirmation Order.

Escrow Account shall mean the account established as a result of an October 19, 2022, Agreement Regarding Loans agreement between the Debtor and FNB by which the Debtor held funds to make certain payment to FNB.

Executory Contracts shall mean all contracts and unexpired leases to which the Debtor is a party and which are executory within the meaning of § 365 of the Bankruptcy Code.

Final Order shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired.

FNB shall mean First National Bank, a Secured Creditor of the Debtor.

GAAP shall mean generally accepted accounting principles.

Holder shall mean (a) as to any Claim, (i) the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or Holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a Holder of a Secured Claim; and (b) as to any interest, the record owner or Holder of such interest as of the Effective Date.

Impaired shall mean any Claim or Interest that is impaired within the meaning of § 1124

Interests shall mean, to the extent applicable to this Chapter 11 Case, the interest of any Holder of stock or membership interests in the Debtor.

Leaf shall mean LEAF Capital Funding, LLC.

M&T shall mean Manufacturers and Traders Trust Company a/k/a M&T Bank.

Petition Date shall mean May 31, 2023, the date on which the Debtor commenced this Chapter 11 Case.

Plan shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as it hereafter may be further modified, amended or supplemented.

Post-Petition shall mean any event occurring on or after the Petition Date.

Pre-Petition shall mean any event occurring before the Petition Date.

Priority Claim shall mean any Allowed Claim of a person holding a Claim entitled to priority pursuant to Bankruptcy Code §507(a) other than an Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8).

Priority Tax Claim shall mean any Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8); provided, however, any Claims for penalties asserted by governmental units shall not be a Priority Tax Claim.

Professionals shall mean persons, including attorneys, accountants, the Trustee, and other professionals, retained or appointed in the Chapter 11 case or to be compensated pursuant to §§ 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code and order of the Bankruptcy Court.

Projections shall mean the Debtor's cash flow projections that are attached hereto as **Appendix D**, as may be modified and amended.

RUS Loan 02 shall mean the loan from USDA to the Debtor dated February 20, 2015, in the original principal amount of $352,000.00, which loan is secured by, inter alia, a third lien mortgage on the real property and improvements commonly known as 1079 Firetower Road, Colera, Maryland 21917.

RUS Loan 04 shall mean the loan from USDA to the Debtor dated February 20, 2015, in the original principal amount of $258,000.00, which loan is secured by, inter alia, a third lien mortgage on the real property and improvements commonly known as 1079 Firetower Road, Colera, Maryland 21917.

Secured Claim shall mean a secured Claim pursuant to § 506 of the Bankruptcy Code, and shall mean an Allowed Claim in an amount equal to the present value of the applicable Creditor's interest in the Debtor's interest in the Property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Bankruptcy Court.

Trustee shall mean Angela Shortall, the Subchapter V trustee appointed in this Chapter 11 Case pursuant to § 1183 of the Bankruptcy Code.

Unsecured Claim shall mean any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the estate's interest in the Debtor's property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtor

7

prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

USDA shall mean the United States of America, acting through the United States Department of Agriculture, Rural Utilities Service.

Wirth shall mean Sandra D. Wirth.

Wirth Contract shall mean the 2021 Employment Contract between the Debtor and Wirth by which Wirth was hired as Head of School.

B.    Terms of Construction

Capitalized terms used in this Plan shall have the meaning set forth herein. In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code. The terms of this Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes hereof and of the Bankruptcy Code.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

ARTICLE I
TREATMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. Except with respect to Cure Claims pursuant to § 365 of the Bankruptcy Code, which shall be provided for in the Plan, all parties

claiming an Administrative Expense Claim(s) shall file an application to approve its respective asserted Administrative Claim for services provided through the Confirmation Date not later than thirty (30) days after the Effective Date. *For the avoidance of doubt, and unless stated otherwise in this Plan, no Claim described herein shall be entitled to treatment as an Administrative Expense Claim unless (1) the Claim is on account of assumption of an executory contract or unexpired lease as set forth in Appendix F; (2) the Court previously entered a Final Order granting administrative expense status to such Claim; or (3) the Claimant files an application to approve their respective asserted Administrative Claim priority status and the Court enters a Final Order with respect to such application after notice and an opportunity for hearing.*

    1.1.   <u>Administrative Expense Claims</u>. Pursuant to § 1191(e) of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim shall receive distributions on account of their Allowed Administrative Claim on the later of (a) the Effective Date or (b) within ten (10) days of the entry of an Order of the Bankruptcy Court approving such administrative claims. All fees and expenses requested by the Holder of an Allowed Administrative Expense Claim for services provided through the Effective Date are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.  For services provided after the Confirmation Date, a notice shall be filed with the Bankruptcy Court setting out fees and expenses incurred with a copy served on all parties in interest (the 'Notice').  Absent an objection filed within thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

1.2.    <u>Estimated Amount of Administrative Expense Claims and Treatment</u>. As set forth in **Appendix B, as** of the filing of this Plan, Debtor estimates that it will have the following Administrative Expense Claims (without altering the requirement of parties to seek Court approval of all Administrative Expense Claims): (a) legal fees for Debtor's counsel, Wolff & Orenstein, LLC of an estimated $80,000.00; (b) fees for the Subchapter V Trustee of an estimated $20,000.00; and (c) and other Administrative Expense Claims estimated to be less than $10,000.00. Administrative professional fees incurred prior to the Effective Date shall be paid on the later of the Effective Date, or upon approval by the Court, from funds held in escrow by Debtor's counsel ($19,862.00) and additional funds from the Debtor.    Each Allowed Administrative Expenses Claims shall be paid within thirty days of the entry of an Order approving the Administrative Expense Claim.

1.3.    <u>Priority Tax Claims</u>. Each Holder of an Allowed Priority Tax Claim shall receive from the Debtor, on account of such Allowed Priority Tax Claim, distributions that total the aggregate amount of the Allowed Priority Tax Claim, which distributions shall be made in equal quarterly payments with the first distribution to be made on the first day of the month following the Effective Date[1] and every three months thereafter until paid in full, which shall occur not later than five (5) years from the Petition Date, which shall be May 31, 2028; or (b) under such other terms as may be agreed upon by both the Holder of such Priority Tax Claim and the Debtor or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. As addressed in **Appendix G**, there are no known Priority Tax Claims.

---

[1]    For example, if the Effective Date is January 23, 2024, the first payment would be due February 1, 2024.

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    General Overview. The Debtor has classified all Claims and Interests in accordance with §§ 1122, 1123 and 1190 of the Bankruptcy Code. A chart detailing each Class of Claims or Interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**. A Claim is in a particular Class for purposes of voting on, and of receiving distributions pursuant to the Plan only to the extent such Claim has not been paid, released or otherwise settled prior to the Effective Date. The table in Section 2.2 below identifies each Class of Claims under the Plan and whether such Class is Impaired or Unimpaired.

2.2.    Designation of Classes. This Plan provides for the establishment of the following Classes of Claims or Interests as provided in § 1122 of the Bankruptcy Code:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Wage Claim | Unimpaired | No |
| 2 | Priority Claims for contributions to employee benefit plan | Unimpaired | No |
| 3 | Allowed Secured Claim of FNB - Term Loan | Impaired | Yes |
| 4 | Allowed Secured Claim of FNB - Line of Credit | Impaired | Yes |
| 5 | Allowed Secured Claim of USDA - RUS Loan 02 | Impaired | Yes |
| 6 | Allowed Secured Claim of USDA - RUS Loan 04 | Impaired | Yes |
| 7 | Allowed Secured Claim of Leaf | Impaired | Yes |

| 8 | Allowed Secured Claim of M&T | Unimpaired | No |
| 9 | Allowed General Unsecured Claims of less than $500.00 | Impaired | Yes |
| 10 | Allowed General Unsecured Claims | Impaired | Yes |

ARTICLE III
TREATMENT OF CLAIMS AND INTERESTS

3.1     Class 1 – Allowed Priority Claims for Wages.  Each Holder of a Claim for unpaid wages which is treated as a Priority Claim under 11 U.S.C. § 507(a)(4)(A) shall receive from the Debtor, on account of such Allowed Priority Claim, distributions that total the aggregate amount of the Allowed Priority Claim, which distribution shall be made on the later of the Effective Date or thirty (30) days after the entry of an Order allowing the Claim if the Claim is disputed in accordance with Section 5.3(a)(i) of this Plan.[2]  There is one filed Proof of Claim (Claim No. 14) in the amount of $5,025.90 that will be paid as part of Class 1.  Class 1 is Unimpaired and therefore the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

3.2     Class 2 – Allowed Priority Claims for Employee Benefits.  Each Holder of a Claim for unpaid contributions to the Debtor's employee benefits plan, which Claim was incurred within 180 days prior to the Petition Date, and which is treated as a Priority Claim under 11 U.S.C. § 507(a)(5), shall receive from the Debtor, on account of such Allowed Priority Claim, distributions that total the aggregate amount of the Allowed Priority Claim, which distributions shall be made on the Effective Date.   There is approximately $27,000.00 in Claims for contributions to the Debtor's employee benefit plan that will be paid as part of Class 2.  Class 2 is Unimpaired and therefore the Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

3.3    <u>Class 3</u> – Allowed Secured Claim of FNB - Term Loan - FNB is the Holder of a first position lien on and against substantially all of the Debtor's Assets.  FNB's Secured Claim for its term loan was perfected by the filing of a UCC Financing Statement and by the recording of a Deed of Trust on the Debtor's real property and improvements thereto.  FNB has not filed a Proof of Claim, but in its Schedules, the Debtor listed the Claim as being $3,848,800.00.  In full and complete satisfaction, the loan balance shall be amortized at the rate of 7.00% per annum over a period of twenty (20) years.  Beginning August 1, 2025, FNB shall receive equal monthly principal and interest payments through August 31, 2031, with a balloon payment of the remaining balance due on September 30, 2031. In addition, from the Effective Date through and including June 30, 2025, additional payments may be made to FNB on a quarterly basis from any ECF.  The determination of whether there is ECF for any quarterly period shall be made within thirty (30) after the end of each quarter and payment of any ECF shall be made within fifteen (15) days thereafter.  ECF during that period, if any, shall be paid to each of FNB, USDA and Casa Laxmi in proportion to the amount of Post-Petition accrued but unpaid interest on their respective Secured Claims.  The total cumulative payment of ECF shall not exceed total accrued and unpaid interest.  The Holder of the Class 3 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 3 Allowed Secured Claim is paid in full as set forth in this Section 3.3 and Article XII of this Plan.  Class 3 is Impaired and therefore the Holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

3.4    <u>Class 4</u> – Allowed Secured Claim of FNB - Line of Credit - FNB is the Holder of a second first position lien (behind only its first position lien) on and against all of the Debtor's

---

[2]    The Debtor intends to object to Proof of Claim 14.

assets.  FNB's Secured Claim for its Line of Credit was perfected by the filing of a UCC Financing Statement and by the recording of a Deed of Trust on the Debtor's real property and improvements thereto. FNB has not filed a Proof of Claim, but in its Schedules, the Debtor listed the Claim as being $998,900.00.  In full and complete satisfaction, the loan balance shall be amortized at the rate of 7.00% per annum over a period of twenty (20) years.  Beginning August 1, 2025, FNB shall receive equal monthly principal and interest payments through August 31, 2031, with a balloon payment of the remaining balance due on September 30, 2031.  As set forth above, in Section 3.3, additional payments of ECF would be made to each of FNB, USDA and Casa Laxmi in proportion to the amount of their Post-Petition accrued but unpaid interest on their respective Secured Claims.  The Holder of the Class 4 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 4 Allowed Secured Claim is paid in full as set forth in this Section 3.4 and Article XII of this Plan.  Class 4 is Impaired and therefore the Holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

     3.5    <u>Class 5</u> – Allowed Secured Claim of USDA - RUS Loan 02 - USDA is the Holder of a third position lien on and against the Debtor's Real Property and improvements thereto.  The Secured Claim for RUS Loan 02 was perfected by the recording of a Mortgage on the Debtor's real property.  USDA has not filed a Proof of Claim, but in its Schedules, the Debtor listed the Claim as being $225,500.00.   In full and complete satisfaction, the loan balance shall be amortized at the rate of 2.00% per annum over a period of thirty-two (32) years.  Beginning August 1, 2025, USDA shall receive equal monthly principal and interest payments through August 31, 2031, with a balloon payment of the remaining balance due on September 30, 2031. As set forth above, in Sections 3.3 and 3.4, additional payments of ECF would be made to each

of FNB, USDA and Casa Laxmi in proportion to the amount of their Post-Petition accrued but unpaid interest on their respective Secured Claims. The Holder of the Class 5 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 5 Allowed Secured Claim is paid in full as set forth in this Section 3.5. Class 5 is Impaired and therefore the Holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

  3.6 <u>Class 6</u> – Allowed Secured Claim of USDA - RUS Loan 04 - USDA is the Holder of a third position lien on the Debtor's Real Property. The Secured Claim for RUS Loan 04 was perfected by the recording of a Mortgage on the Debtor's real property and improvements thereto. USDA has not filed a Proof of Claim, but in its Schedules, the Debtor listed the Claim as being $304,400.00. In full and complete satisfaction, the loan balance shall be amortized at the rate of 2.25% per annum over a period of thirty-two (32) years. Beginning August 1, 2025, USDA shall receive equal monthly principal and interest payments through August 31, 2031, with a balloon payment of the remaining balance due on September 30, 2031. As set forth above, in Sections 3.3 through 3.5, additional payments of ECF would be made to each of FNB, USDA and Casa Laxmi in proportion to the amount of their Post-Petition accrued but unpaid interest on their respective Secured Claims. The Holder of the Class 6 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 6 Allowed Secured Claim is paid in full as set forth in this Section 3.6. Class 6 is Impaired and therefore the Holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

3.7    Class 7 – Allowed Secured Claim of Leaf - Leaf is the Holder of a fourth position lien on certain of the Debtor's non-real estate assets.  The Secured Claim was perfected by the filing of a UCC Financing Statement listing VAR Technology Financing as the secured creditor and identifying its collateral as "Verkada Cameras and Verkada Software" including "parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins)."  A Restructure Agreement was executed in April of 2022 and, as part of that agreement, a revised UCC Financing Statement listing VAR Technology Financing as the secured creditor was filed identifying the collateral as substantially all of the Debtor's non-real property assets.  Leaf filed Proof of Claim No. 9 asserting a Secured Claim in the amount of $36,808.04.  In full and complete satisfaction, Leaf shall elect to either (a) have the loan balance amortized at the rate of 6.0% per annum over a period of twenty (20) years through equal monthly principal and interest payments beginning August 1, 2024 and continuing through August 31, 2031, with a balloon payment of the remaining balance due on September 30, 2031, or (b) have its Claim treated as a general Unsecured Claim, waive its lien rights, and be deemed to be a Class 10 Claim to be paid *pro rata* with the other Claims in Class 10.  The election shall be exercised within thirty (30) days of the Effective Date by filing a Line with the Court identifying Leaf's election.  In the event that an election is not made within thirty (30) days of the Effective Date, Leaf shall be deemed to have elected to be treated, and paid, as the holder of a Class 10 Unsecured Claim.  In the event Leaf elects to be treated as Secured, the Holder of this Class 7 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 7 Allowed Secured Claim is paid in full as set forth in this Section 3.7.  Class 7 is Impaired and therefore the Holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

3.8    Class 8 – Allowed Secured Claim of M&T - M&T is the Holder of a claim that results from its financing of the Debtor's 2019 Toyota 4Runner.  M&T's lien is reflected on title to the 2019 Toyota 4Runner.  The Debtor has been making regular monthly payments during the course of the Chapter 11 Case and will continue to make those payments under the contract terms until the obligation is paid in full.  Toyota has not filed a Proof of Claim, but in its Schedules, the Debtor listed the Claim as being $14,600.00.  The Holder of the Class 8 Allowed Secured Claim shall retain its Pre-Petition lien securing the loan to the same extent and priority that existed on the Petition Date until such time as the Class 8 Allowed Secured Claim is paid in full.  Class 8 is Unimpaired and therefore the Holder of the Class 8 Claim is not entitled to vote to accept or reject the Plan.

3.9    Class 9 – Allowed General Unsecured Claims of Less Than $500.00.  In full and complete satisfaction, discharge and release of the Class 9 Claims, the Debtor shall pay the Holders of Allowed Class 9 Claims, in full, without interest, within ninety (90) days of the Effective Date.  Class 9 is Impaired and therefore the Holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

3.10    Class 10 – Allowed General Unsecured Claims: In full and complete satisfaction, discharge and release of the Class 10 Claims, the Debtor shall pay the Holders of Allowed Class 10 Claims, without interest, their pro-rata shares of all available projected disposable income, defined as ECF, less all payments made to Secured Creditors, paid quarterly beginning on September 30, 2025 and continuing during the term of this Plan.  Class 10 General Unsecured Claims total approximately $1,800,000.00.  Holders of Class 10 General Unsecured Claims are expected to receive one hundred percent (100%) of their Allowed Claims. Class 10 is Impaired and therefore the Holders of Class 10 Claims are entitled to vote to accept or reject the Plan.

ARTICLE IV
EXECUTION AND IMPLEMENTATION OF PLAN

4.1.    Vesting of Property in the Debtor Free and Clear. Except as otherwise provided in this Plan or the Confirmation Order, all property of the Debtor's estate shall, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vest in the Debtor as of the Effective Date free and clear of any Claim of any Creditor provided for by this Plan.

4.2.    Corporate Governance. Upon the Effective Date, the day-to-day operations of the Debtor shall continue to be overseen by its Board of Trustees.  To the extent applicable to a case under Subchapter V, the Debtor will amend its governing documents to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

4.3.    Source of Payments.[3]  The sources and value of funds and assets for distribution is addressed in **Appendix D-3**.

(a)    DIP Financing.  Pursuant to the terms of the Amended DIP Financing Agreement, Casa Laxmi shall make advances to the Debtor from time to time with existing

---

[3]    In its Second Interim Order Authorizing Debtor in Possession Financing And Use of Cash Collateral and Setting Final Hearing [Dkt. 57] entered July 7, 2023 (the "Order"), the Court held as follows:

> ORDERED, that the Debtor shall use the cash collateral in the Escrow Account to make monthly payments to FNB in the amount of $23,657.81 on account of the Term Loan and $7,096.52 on account of the Line of Credit,9 provided, however, that any and all payments made by the Debtor under this Order and the First Interim Orders are subject to further Order of the Court and potential reallocation, refund, or replenishment depending on the outcome of the Final Hearing . . . .

Based upon the subsequent valuation of the Debtor's Property, the Debtor reserves the right to seek a refund of the amounts paid from the Escrow Account to FNB following the entry of the Order and to be able to use those amounts to pay the obligations set out in this Plan.

balances on the loans not to exceed $2,000,000.00 at any time. The amounts advanced shall accrue interest at the rate of 10% per annum and shall be secured by a first-priority lien on and against all of the Debtor's assets, real and personal.  The liens and security interests granted to Casa Laxmi under this Plan and the Amended DIP Financing Agreement shall become and are duly perfected without the necessity for the execution, filing or recording of financing statements, security agreements and other documents which might otherwise be required pursuant to applicable non-bankruptcy law for the creation or perfection of such liens and security interests.  On or after the Effective Date, and without further Order of the Court, Casa Laxmi may, in its sole discretion, file such financing statements, security agreements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages consistent with this Plan and the Amended DIP Financing Agreement, and all such documents shall be deemed to have been filed or recorded at the time of and on the Effective Date.  A copy of the Amended DIP Financing Agreement is attached hereto as **Appendix H.**

(b)    Tuition and Fees.  During the term of this Plan, in addition to the receipt of DIP Financing, the Debtor shall pay all projected disposable income from tuition and fees that are necessary for the performance of the Plan, which disposable income is projected as set forth in **Appendix D-1**.  The assumptions used to support the Debtor's projected disposable income are addressed in **Appendix D-2**.  Unless expressly authorized under the provision of any grants or donations received during the Plan period, grants and donations shall not be used to fund the Plan obligations under the Plan.

4.4.    <u>Plan Term</u>. Except as otherwise set forth in the Plan, the term of the Plan begins on the Effective Date and ends on the sixtieth (60th) month subsequent to that date.

4.5.     _Disposable Income and Plan Funding_. An exhibit describing (a) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (b) the details supporting and the assumptions under which the Projections were made, (c) the source and value of funds and assets available for distribution under the Plan, and (d) a summary of payments under the Plan are attached as **Appendix D-4**.

4.6.     _Option to Pay Claims Sooner Than Projected_. In the event Debtor is able to satisfy its obligations in Article III sooner than projected, Debtor may opt to pay any or all Creditors early.

ARTICLE V
DISTRIBUTIONS UNDER THE PLAN

5.1.     _General_. The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period. If the Debtor's projections prove correct, Unsecured Creditors holding Allowed Claims will receive payment of their Claims in full.  Based upon an Order of the Bankruptcy Court, the Debtor's improved real property was determined to have a value of $10,300,000.00 which, if realized on liquidation, would be more than sufficient to pay the Allowed Claims of creditors in full.  The Debtor's Plan provides that creditors will not receive less in this Chapter 11 Case than they would have received if this Chapter 11 Case was converted to Chapter 7.

5.2.     _Delivery of Distributions and Time Bar to Payment_.   The Bankruptcy Code provides, among other things, that if the Plan is approved on a consensual basis, the Debtor shall make distributions provided for in the Plan.   In the event the Plan is approved on a non-consensual basis, however, the Bankruptcy Code provides that, unless otherwise provided in the

20

Plan or order of the Bankruptcy Court, the Trustee shall make disbursements under the Plan. Because disbursements by a Trustee (or other third party) increase the administrative costs under or in connection with the Plan, the Debtor intends to seek approval of the Bankruptcy Court to self-disburse distributions to Holders of Allowed Claims, whether confirmed on a consensual or non-consensual basis.  In the event the Court directs the Trustee to make distributions to Holders of Allowed Claims, Holders of Allowed Claims must provide the Trustee a W-9 form before such distributions commence.

The Debtor (or the Trustee if applicable) shall stop payment on any distribution check that is not cleared through the account upon which such check is drawn within ninety (90) days of the date of distribution. Distribution checks shall be mailed to the addresses given in Proofs of Claim filed herein, or, as to those Creditors who did not file a Proof of Claim, to the addresses listed in the Debtor's Schedules, unless the Debtor receives other instructions in writing from such Creditor(s). All funds which are not distributed as a result of stopped checks shall become property of the Debtor for use in subsequent distributions. It shall be the obligation of each Creditor to provide written notice to the Debtor of any change of the Creditor's address.

5.3.    <u>Disputed Claims</u>.

(a)    A disputed Claim is a Claim that has not been Allowed or disallowed by Final Order and, either:

(i)    A Proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)    No Proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent or unliquidated.

(b)     Delay of Distribution on a Disputed Claim. No distribution will be made on a disputed Claim unless the Claim is Allowed by a Final Order.

(c)     Settlement of Disputed Claims. The Debtor shall have the power and authority to settle and compromise a disputed Claim with Bankruptcy Court approval and compliance with the Bankruptcy Rule 9019.

ARTICLE VI
PAYMENTS TO CREDITORS UNDER THE PLAN

Unless otherwise provided in the Plan, funds received by the Debtor or otherwise included in this Plan but not specifically disbursed to a secured Creditor under the Plan, shall be used to pay the following Claims in the priority indicated:

6.1.    Except as provided in § 1191(e) of the Bankruptcy Code, all Claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth in Article I, Article III and **Appendix B**.

6.2.    Pursuant to § 1191(e) of the Bankruptcy Code, the payment of Claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth Article I and **Appendix B**.

6.3.    All Secured Claims, if any, shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth in Article III and **Appendix B**.

6.4.    *Parra-passu* with the foregoing Claims, sums received by the Debtor shall be paid, on a pro-rata basis, to Allowed General Unsecured Claims as set forth in Article III and **Appendix B**.

## ARTICLE VII
## TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 Case as a Holder of an Administrative Expense Claim under § 507 of the Bankruptcy Code, and shall be paid by the Debtor as set forth in Section 1.2; notwithstanding, all fees and expenses requested by the Trustee, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. The Debtor, Creditors and any party-in-interest reserve the right to object to the extent and amount of the Trustee Compensation.  Debtor estimates the Administrative Expense Claim in favor of the Trustee to be approximately $20,000.00.

For services provided after the Confirmation Date, the Trustee shall file the Notice and serve a copy the Notice on all parties in interest. Absent an objection filed within thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

## ARTICLE VIII
## COMPENSATION TO DEBTOR'S PROFESSIONALS

The Debtor's attorney, Wolff & Orenstein, LLC, shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 507 of the Bankruptcy Code and pursuant to Section 1.2 of this Plan. All fees and expenses requested by the Debtor's attorney, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Debtor estimates the Administrative Expense Claim in favor of the Wolff & Orenstein, LLC to be approximately $80,000.00.

For services provided after the Confirmation Date, Wolff & Orenstein, LLC shall file the Notice and serve a copy the Notice on all parties in interest. Absent an objection filed within

thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

ARTICLE IX
LIQUIDATION ANALYSIS

Section 1190(1)(B) of the Bankruptcy Code and the Local Rules of the Bankruptcy Court dictate that the Debtor provide a liquidation analysis of its assets. In this case, the Court previously determined that the value of the Debtor's improved real property substantially exceeds the amount of the Claims against the Debtor. For that reason, and for purposes of this Plan, the Plan assumes that liquidation of the Debtor's assets would produce no less than $10,300,000.00. The Debtor proposes to pay Claims in full and, for that reason, Creditors will not receive less under this Plan than they would in a case under Chapter 7 of the Bankruptcy Code. The Debtor's liquidation analysis is included at **Appendix C**.

ARTICLE X
**EXECUTORY CONTRACTS**

10.1.    Rejection. Pursuant to § 365 of the Bankruptcy Code, the Debtor rejects each Executory Contract and Unexpired Lease, effective upon the Effective Date of this Plan, unless (i) it has been previously assumed by Order of the Bankruptcy Court, (ii) is listed on **Appendix F** as an assumed lease or executory contract, or (iii) is otherwise assumed in this Plan. The Executory Contract that the Debtor proposes to reject are identified in **Appendix E**.

10.2.    Approval of Assumption of Executory Contracts. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the assumption and Cure of each contract assumed as reflected in **Appendix E** of this Plan. The Debtor reserves the right to reject any Unexpired Lease and/or Executory Contract prior to the Confirmation Hearing.

24

10.3.   <u>Assumption Procedures</u>: Subject to Section 5.3 of the Plan, any monetary defaults existing under each Executory Contract or Unexpired Lease to be assumed under the Plan will be cured as an Administrative Expense Claim during the term of this Plan.

10.4.   <u>Insurance Policies</u>. All the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts that will be assumed under the Plan.

10.5.   <u>Rejection Damages</u>. Any Claim for damages against the Debtor arising from the rejection by the Debtor of any Executory Contract pursuant to this Article or during the pendency of the Debtor's Chapter 11 Case shall be forever barred and shall not be enforceable against the Debtor or its property or interests in property, and no Holder of any such Claim shall participate in any distribution under the Plan with respect to such Claim, unless a proper Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease under the Plan is filed with the Bankruptcy Court and served on the Trustee and the Debtor no later than thirty (30) days after the Effective Date and the Claim is Allowed. Any Allowed rejection damage Claim shall be treated as a Class 10 General Unsecured Claim.

ARTICLE XI
<u>GENERAL PROVISIONS</u>

11.1.   <u>Effect of Confirmation</u>.

(a)   <u>Binding on Debtor and Creditors</u>. Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon the Confirmation Date, bind the Debtor, each and every Creditor of this estate and each party in interest, whether or not the Claim of such Creditor or party is provided for by the Plan and whether or not such Creditor or party has accepted or has rejected the Plan.

25

(b)      <u>Injunction against Interference with Plan</u>. Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(c)      <u>Default</u>.  Except as otherwise set forth in Article XII of the Plan, an event of default under the Plan shall occur if the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than ten (10) days after the time specified in the Plan for such payment or other performance. Upon the occurrence of a default, the United States Trustee or a Creditor affected by the default shall provide Debtor's attorney, with a copy to the Trustee, of a written notice of default and a ten (10) day opportunity to cure or to move to obtain from the Bankruptcy Court an extension of time to cure the default, or a determination that no default occurred. In the event the Debtor fails to cure the default or seek and obtain an extension to cure from the Bankruptcy Court, either or both of which shall constitute an "Event of Default", the affected Creditor shall be entitled to enforce its/their state court rights and remedies under applicable state law.

(d)      <u>Injunction against Certain Actions</u>. Except upon the occurrence of an Event of Default under this Plan or, in the case of an Allowed Secured Claim, the governing loan documents, as modified by this Plan, as of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against the Debtor, or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation,

26

any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (c) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law.

(e)      Rights of Action. On and after the Confirmation Date, the Debtor shall have the right and standing to enforce for the benefit of the Debtor and its Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor that arose before or after the Petition Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

11.2.   Discharge. If the Plan is confirmed as a consensual plan pursuant to 11 U.S.C. § 1191(a), on the Confirmation Date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) of a kind specified in § 1141(d)(6)(B). However, if the Plan is confirmed on a non-consensual basis pursuant to 11 U.S.C. § 1191(b), the Debtor will receive its discharge upon the payment of its final distribution in accordance with §1192.

11.3.  <u>Waiver of Certain Fees</u>. Except as otherwise set forth in this Plan, all Holders of Allowed Unsecured or Allowed Priority Tax Claims, waive all penalties, default interest and/or late fees that may have accrued on their Claims.

11.4.  <u>Professional Fees and Expenses</u>. All fees for services rendered and expenses incurred after the Confirmation Date by Professionals engaged by the Debtor shall be paid by the Debtor in the ordinary course of business without the necessity of filing fee applications or seeking approval of the Bankruptcy Court.

11.5.  <u>Setoffs</u>. The Debtor reserves all rights to offset a mutual debt owed to any Creditor against such Creditor's Allowed Claim or against any distribution required to be made by the Debtor to such Creditor with respect to an Allowed Claim.

11.6.  <u>Modification of Plan</u>. The Debtor reserves the right, in accordance with § 1193 the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan.

11.7.  <u>Withdrawal or Revocation</u>. The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur for any reason, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim or Interest by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

11.8.  <u>Notices</u>. Any notices to or requests of the Debtor or the Trustee by parties in interest under or in connection with this Plan shall be in writing and occur by electronic mail and served either by (i) regular first-class mail, return receipt requested, postage prepaid, (ii) hand

delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> The Debtor:
>
> The West Nottingham Academy in Cecil County
> 1079 Firetower Road
> Colora, Maryland 21917
>
> with copies to:
>
> Jeffrey M. Orenstein, Esq.
> Wolff & Orenstein, LLC
> 15245 Shady Grove Road, Suite 465
> Rockville, Maryland 20850
> jorenstein@wolawgroup.com
>
> The Trustee:
>
> Angela Shortall
> 3Cubed Advisory Services, LLC
> 111 S. Calvert St., Suite 1400
> Baltimore, Maryland 21202
> ashortall@3cubed-as.com

11.9.   <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.10.   <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

11.11.   <u>Appendices</u>. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

11.12.   <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.13.  Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise providing in this Plan.

11.14.  Notice of Effective Date. The Debtor will file a Notice of Effective Date within seven days of the Effective Date.

11.15.  Substantial Consummation. Not later than 14 days after the Plan of the Debtor is substantially consummated, the Debtor shall file with the court and serve on the Trustee, the United States trustee, and all parties in interest notice of such substantial consummation which complies with Local Rule 3022-1(e).

11.16.  Progress Reports. As required under Local Rule 3022-1(d), the Debtor will file, and serve upon the U.S. Trustee, a progress report six (6) months after the entry of the confirmation order and every six (6) months thereafter, each report detailing the progress made towards full administration of the Plan, to include distributions made to-date and any other substantial activities that would impede full administration.

ARTICLE XII
ADDITIONAL PROVISIONS RELATING TO FNB AND USDA

12.1.  Profit and Loss Statements.  Within thirty (30) days of the end of each calendar quarter, the Debtor will provide FNB and USDA with quarterly profit and loss statements commencing with the period ending September 30, 2024, which statements shall include Quarter and Cumulative Year-to-Date results.

12.2.  <u>Audited Financial Statements</u>.  Beginning in 2024, the Debtor will provide FNB and USDA with annual audited financial statements within 120 days following the end of the Debtor's fiscal year which is, and shall remain, June 30.

12.3.  <u>Student Census</u>.  Beginning in 2024, the Debtor will provide FNB and USDA with monthly student census and enrollment updates during the months of February through and including August, which updates will include (a) existing enrollment figures for each pending graduating class, and (b) commitments and projected corresponding tuition for the ensuing school year.

12.4.  <u>Student Commitments</u>.  By no later than June 30, 2024, the Debtor shall have firm, executed, commitments from new and returning students that will reflect tuition of no less than $3,500,000.00 being received for the 2024-2025 fiscal year.

12.5.  <u>Accreditation</u>.  The Debtor shall maintain its accreditation from the Middle States Association of Colleges and Schools from the Effective Date through September 30, 2031, and shall notify FNB and USDA of any lapse in such accreditation within fifteen (15) days of losing such accreditation.  The Debtor's failure to cure any lapse of accreditation within twenty (20) days shall be an event of default that will permit FNB and USDA to exercise any and all of their respective rights and remedies under their loan documents with the Debtor.

12.6.  <u>Other Events of Default</u>.  The Debtor's failure to meet any of the requirements detailed in Section 12.1 through 12.6 shall, after the expiration of written notice and twenty (20) days to cure, give rise to FNB's and USDA's right to either (a) file a motion for relief from the automatic stay to allow FNB and USDA the ability to exercise any and all of their rights and remedies under their respective loan documents; or (b) to file a motion seeking the dismissal of the Debtor's case and/or the conversion of the Debtor's case to a case under Chapter 7 of the

Bankruptcy Code, with the Debtor reserving the right to contest such relief.  The right of FNB and USDA mentioned in this Section is not intended to and does not limit the rights of FNB or the USDA that they may otherwise have to file a motion for relief from the automatic stay or to file a motion seeking the dismissal of the Debtor's case and/or the conversion of the Debtor's case to a case under Chapter 7 of the Bankruptcy Code.

12.7.    Additional Costs and Expenses.  Until paid in full under the terms of this Plan, the Debtor shall remain obligated for all debt owed under the FNB and USDA Loans, including ongoing reasonable legal fees, reasonable appraisal fees, and any other reasonable reimbursements (collectively "Costs") that are permitted under their respective loan documents. The Debtor reserves the right to challenge and have the Bankruptcy Court determine the reasonableness of such Costs.  All such allowed Costs shall be added to principal balances of the loans and be paid in accordance with the treatment of FNB's and USDA's Claims in this Plan.

## ARTICLE XIII
## PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within the Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## ARTICLE XIV
## JURISDICTION OF THE COURT

14.1    The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, this Chapter 11 case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a)     To hear and determine any motions for the assumption or rejection of Executory Contracts, and the allowance of any Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications and contested matters;

(c)     To hear and determine any objection to any Claims;

(d)     To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(e)     To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(g)     To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(h)     To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(j)     To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

33

(k)     To recover all assets of the Debtor and property of the estate, wherever located;

(l)     To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(m)     To enforce and interpret the discharge of Claims and Interests affected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(n)     To hear any other matter consistent with the provisions of the Bankruptcy Code;

(o)     To enter a final decree closing this Chapter 11 case; and

(p)     To hear and determine such other issues as the Bankruptcy Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

DATED: November 28, 2023              THE WEST NOTTINGHAM ACADEMY
                                                                IN CECIL COUNTY


                                        \s\ Kiran Kulkarni
                                   By: Kiran Kulkarni, Trustee



                                        \s\ Jeffrey M. Orenstein
                                   JEFFREY M. ORENSTEIN (#07512)
                                   Wolff & Orenstein, LLC
                                   Shady Grove Plaza
                                   15245 Shady Grove Road, Suite 465
                                   Rockville, Maryland 20850
                                   (301) 250-7232
                                   jorenstein@wolawgroup.com

                                   Attorneys for the Debtor

34